# In the United States Court of Federal Claims

No. 11-224L

(Filed January 20, 2012)

* * * * * * * * * * * * * * * * * * * * * * * * *
|  |  |
|---|---|
| **DONALD L. PELLEGRINI et al.,** | Fifth Amendment Takings Clause; Army Corps of Engineers; dredging; collapse of uplands, seawalls and structures; subject-matter jurisdiction; 28 U.S.C. § 1500; claims pending in another court until dismissed; same operative facts; no jurisdiction to enjoin dredging or to prevent future takings. |
| Plaintiffs, |  |
| v. |  |
| **THE UNITED STATES,** |  |
| Defendant, |  |

* * * * * * * * * * * * * * * * * * * * * * * * *

*G. J. Rod Sullivan, Jr.*, of Jacksonville, Florida, for plaintiffs.

*Stephen Finn*, Environment & Natural Resources Division, Department of Justice, with whom was *Ignacia S. Moreno*, Assistant Attorney General, of Washington, D.C., for defendants.

### MEMORANDUM OPINION AND ORDER

WOLSKI, Judge.

This case is before the Court on defendant's Motion to Dismiss, in Part, for Lack of Jurisdiction, pursuant to Rules 12(b)(1) and 12(h)(3) of the Rules of the United States Court of Federal Claims ("RCFC") and 28 U.S.C. § 1500 ("Section 1500"). Defendant's motion seeks dismissal of the claims of three of the plaintiffs and dismissal of a cause of action requesting equitable relief. Def.'s Mot. to Dismiss ("Def.'s Mot.") at 11. Defendant's motion has been fully briefed and oral argument on the motion was held. For the reasons that follow, defendant's motion is **GRANTED**.

### I. BACKGROUND

Plaintiffs filed suit in the United States Court of Federal Claims on April 11, 2011. They allege that they are owed just compensation under the Takings Clause of the Fifth Amendment of the Constitution of the United States and that the Court has jurisdiction over their claims under the Tucker Act, 28 U.S.C. § 1491(a)(1). Compl. ¶¶ 4-5. The named plaintiffs in this case are three owners --- Donald and Brenda Pellegrini and Anne Ebel --- and two lessors --- Mladen and Beverly Ziza --- of riverfront property situated on Ramoth Drive along the St. Johns River in Jacksonville, Florida. Compl. ¶¶ 1-3. The action is putatively brought on behalf of the class of similarly situated riverfront property owners and lessors along Ramoth Drive, which is estimated

to be 150 people living in forty-five homes along the drive. *Id.* ¶¶ 4, 6. Each riverfront lot along Ramoth Drive allegedly has an easement appurtenant burdening the government's navigational servitude such that plaintiffs are permitted to build, maintain, and use docks, seawalls, and boathouses that extend into the river. *Id.* ¶¶ 1-4.

The takings claims asserted in this case result from dredging of the St. Johns River conducted by the Army Corps of Engineers ("the Corps"). Compl. ¶ 7. The dredging activity was allegedly part of the "St. Johns River Maintenance Dredge Project" and occurred in "[c]uts 40-41, in the vicinity of buoy 34, immediately adjacent to the property owned by plaintiffs." *Id.* Plaintiffs allege that as sediment in the center of the river was removed by the Corps, "lateral and subjacent" support of the riverbank was lost, causing a sudden subsidence of the riverbank, which in turn caused the "collapse of plaintiffs' seawalls, and adjacent structures."[1] *Id.* The facts alleged in the complaint do not include specific dates when the seawalls and adjacent structures collapsed, nor specific or even approximate dates of the dredging. *See id.* ¶¶ 7-8. An estimated date range is possible, however, with respect to the accrual of the Zizas' claim. The document signed by Barbara Crause --- owner of the Zizas' leased property --- attached to the complaint states that damage to her seawall and dock occurred in April and May of 2010. Attach. to Compl. at 1.

The property interests allegedly taken consist of: 1) the formerly "privately-owned uplands lying outside [d]efendant's navigational servitude" that, after collapsing into the river, were converted to public lands lying "particularly or completely below mean high water;" 2) the pre-existing seawalls and adjacent structures (docks and boathouse); and 3) the right to use the public lands extending out into the river for docks and boathouses. Compl. ¶¶ 4, 7, 8. Plaintiffs seek a declaratory judgment that defendant's dredging resulted in a taking of their private property "without due process of law" and seek monetary damages as just compensation owed to them under the Fifth Amendment. *Id.* at 4-5.[2] Concerned about losing additional property, plaintiffs also seek a permanent injunction that would prevent the Corps from conducting any further dredging in the vicinity of Ramoth Drive and a permanent injunction that requires the

---

[1] The "adjacent structures" presumably include the docks owned by Ms. Ebel and the Pellegrinis, Def.'s Mot. Ex. 1 at 8-11, and the dock leased by the Zizas, Attach. to Compl. at 1, and might also include the Pellegrinis' boathouse --- which was mentioned in a later filing, Pls.' Resp. to Mot. to Dismiss at 2, but not listed in the Pellegrinis' administrative claim form filed with the Corps, *see* Def.'s Mot. Ex. 1 at 8.

[2] Plaintiffs have included a second cause of action, seeking the indentical declaration and damages as under what appears to be their first cause of action (which went unlabelled), based on the Fifth Amendment's Due Process Clause, rather than its Takings Clause. *See* Compl. at 4-6. The Supreme Court has long held that a taking of private property for public use by a *state* without payment of just compensation violates the Due Process Clause of the Fourteenth Amendment, *see Chicago, B. & Q. R. Co. v. Chicago*, 166 U.S. 226, 241 (1897), and perhaps that is why plaintiffs included this redundant second cause of action.

government to build a bulkhead --- in accordance with designs previously commissioned by plaintiffs --- along the riverbank on Ramoth Drive to prevent additional collapse. *Id.* at 6-7.

On July 22, 2010 --- prior to filing their takings claims in the Court of Federal Claims --- Ms. Ebel and the Pellegrinis filed an action under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-2680, in the United States District Court for the Middle District of Florida styled *Ebel v. United States*, No. 3:10-cv-635-RBD-JRK (M.D. Fla. 2010). Def.'s Mot. at 2-3. In the *Ebel* complaint, plaintiffs allege that the Corps's dredging of the St. Johns River at "[c]uts 40-41, in the vicinity of buoy 34, immediately adjacent to the property owned by plaintiffs" negligently caused damage to plaintiffs' docks, seawalls, and backyards. Def.'s Mot. Ex. 1 at 2 (*Ebel* Compl. ¶ 4). Similar to the complaint filed in the present case, the four corners of the *Ebel* complaint do not include specific dates when the seawalls and adjacent structures collapsed, nor specific or even approximate dates of the dredging. *See id.* at 1-3 (*Ebel* Compl.). The *Ebel* complaint, however, references attached administrative claim forms filed with the Corps by Ms. Ebel and the Pellegrinis that cover damage to their docks and boatlifts that occurred on March 8, 2008. *Id.* at 8-11 (*Ebel* Compl. Ex. C). The *Ebel* complaint also references an attached declaration of George Smith --- Ms. Ebel's marine contractor --- who states that Ms. Ebel's seawall collapsed due to substantial, unnatural subsidence caused by dredging in May 2010. *Id.* at 6-7 (*Ebel* Compl. Ex. B). Thus, the *Ebel* complaint encompasses dredging before March 8, 2008 that allegedly caused damage to Ms. Ebel's and the Pellegrinis' property on March 8, 2008 and also encompasses dredging in May 2010 that allegedly caused damage to Ms. Ebel's property sometime between May 2010 and July 20, 2010.

On July 23, 2010, the district court issued an order in *Ebel* questioning whether it could exercise jurisdiction over all of the claims raised by the complaint. Pls.' Supp'l Mem. Ex. 7 at 2-3. The *Ebel* court observed that it would not have jurisdiction over claims filed under the FTCA unless the claimants first filed administrative claims with the appropriate agency. *Id*. The *Ebel* court read the complaint as appearing to encompass dredging and damages occurring in 2008 as well as "additional dredging activities and new damages occurring between April and July 2010." *Id.* at 3. Yet the administrative claim notices attached to the *Ebel* complaint only pertain to damages occurring in 2008 and no notices of claim were evidenced for the alleged 2010 damages. *Id.* By way of pursuing this inquiry, the *Ebel* court requested that plaintiffs brief "whether the 2008 notices are sufficient to effect a waiver of the government's sovereign immunity for the claims arising in 2010." *Id.* On September 14, 2011, after oral argument on the motion presently before the Court, plaintiffs moved the district court to dismiss *Ebel* without prejudice. Pls.' Supp'l Mem. Ex. 1 at 1-4. The district court granted the motion on October 12, 2011, dismissed *Ebel* without prejudice, and closed the case. Docket No. 16-1 at 2 (*Ebel* Docket No. 55).

## II. DISCUSSION

Whether a federal court has jurisdiction to decide the merits of a case is a threshold matter. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998) (citation omitted). "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to

declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1869). The parties or the court *sua sponte* may challenge the existence of subject-matter jurisdiction at any time. *Capron v. Van Noorden*, 6 U.S. (2 Cranch) 126, 127 (1804); *Folden v. United States*, 379 F.3d 1344, 1354 (Fed. Cir. 2004); *James v. United States*, 86 Fed. Cl. 391, 394 (2009).

When considering whether to dismiss a complaint for lack of jurisdiction, the Court assumes that the uncontroverted allegations in the complaint are true and construes those allegations in plaintiffs' favor. *Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995).[3] Plaintiffs bear the burden of proving by a preponderance of the evidence that the Court possesses subject-matter jurisdiction. *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988). If the Court determines that it lacks subject-matter jurisdiction over a claim, the claim must be dismissed. RCFC 12(h)(3).

## A. Section 1500 Precludes the Court from Exercising Jurisdiction over Ms. Ebel's and the Pellegrinis' Claims

Section 1500 "shuts the door to this Court's jurisdiction when a sufficiently similar suit against the United States government is pending in another court at the time litigants bring their case to our doorstep." *Young v. United States*, 60 Fed. Cl. 418, 419 (2004). Section 1500 provides in relevant part:

> The United States Court of Federal Claims shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States.

28 U.S.C. § 1500 (2006). "[T]he term 'claim' in [Section] 1500 [is] defined by the operative facts alleged, not the legal theories raised." *Johns-Manville Corp. v. United States*, 855 F.2d 1556, 1563 (Fed. Cir. 1988). Claims based on substantially the same operative facts are considered the same claim for purposes of Section 1500, "regardless of the relief sought in each suit." *United States v. Tohono O'Odham Nation*, 131 S. Ct. 1723, 1731 (2011) ("*Tohono*").

"Pending" for purposes of Section 1500 is given its plain, unambiguous meaning. *Johns-Manville*, 855 F.2d at 1567. The well-understood meaning of "pending," when used as an adjective in the legal context, is "remaining undecided" or "awaiting decision," *Black's Law Dictionary* 1248 (9th ed. 2009), and this has been so for many years, *see, e.g.*, William A. Wheeler, *A Dictionary of the English Language* 528 (1868) (defining pending as "[r]emaining undecided; in suspense"); 11 *Oxford English Dictionary* 468 (2d ed. 1989) (citing a 1797 usage

---

[3] If a party submits evidence challenging the jurisdictional facts alleged in a complaint, however, those allegations are no longer assumed to be true. *See James v. United States*, 86 Fed. Cl. 391, 394-95 (2009).

of the term in a reference to legal proceedings). Any claim that has been filed but not dismissed or finally adjudicated is therefore "pending." For purposes of Section 1500, the question of whether another claim is pending "is determined at the time at which the suit in the Court of Federal Claims is filed." *Loveladies Harbor, Inc. v. United States*, 27 F.3d 1545, 1548 (Fed. Cir. 1994) (*en banc*), *overruled on other grounds by Tohono*, 131 S. Ct. 1723.[4] It is a "longstanding principle that 'the jurisdiction of the Court depends upon the state of things at the time the action was brought.'" *Keene Corp. v. United States*, 508 U.S. 200, 207 (1993) (quoting *Mollan v. Torrance*, 22 U.S. (9 Wheat.) 537, 539 (1824) (Marshall, C.J.)).

On June 10, 2011, defendant moved to dismiss several of plaintiffs' claims pending in our court, arguing that Section 1500 bars the Court from taking jurisdiction over the takings claims of Ms. Ebel and the Pellegrinis because the negligence claims in *Ebel* were pending when the takings claims were filed here and the claims in both cases are based on the same operative facts. Def.'s Mot. at 7-8. Plaintiffs deny that a single set of operative facts gave rise to all the claims. Instead, plaintiffs argue that their takings claims before this court are based on at least two separate incidents of dredging and that the negligence claims in *Ebel* were based on just one of these. *See* Pls.' Resp. to Def.'s Mot. to Dismiss ("Pls.' Resp.") at 2-3, 6. Plaintiffs assert that one incident of dredging occurred prior to March 8, 2008, which caused the collapse of the Pellegrinis' dock and boathouse; that another incident of dredging occurred between March 8, 2008 and June 15, 2010, which caused additional damage to the Pellegrinis' seawall and the collapse of Ms. Ebel's seawall on June 15, 2010; and that the second dredging resulted in damage to the Zizas' property that was incurred at another, unspecified time. *Id.* at 2. Plaintiffs argue that the district court exercised jurisdiction only over claims pertaining to the 2008 dredging, so claims resulting from later dredging were never pending before the district court for purposes of Section 1500. *Id.* at 2-3, 6.

---

[4]  The government gratuitously offers its "view" that the order-of-filing rule of *Tecon Engineers, Inc. v. United States*, 170 Ct. Cl. 389, 399 (1965), which it concedes is not at issue in this case, "does not reflect good law." Def.'s Mot. at 5 n.3. It bases this irrelevant opinion on two earlier decisions of the Court of Claims, *Hobbs v. United States*, 168 Ct. Cl. 646, 647-48 (1964) and *Maguire Industries, Inc. v. United States*, 114 Ct. Cl. 687, 688, 690 (1949), which were among those the *Tecon* court determined could provide no direction on the issue because "there [was] no indication that the issue of priority was ever fully briefed, considered, or decided." *Tecon*, 170 Ct. Cl. at 401; *see also id.* at 400 & n.3 (distinguishing *Maguire* as a case involving litigation already pending when a suit was brought in our predecessor court). The government also provided a *confer* reference to a portion of the *Tohono* opinion, which the Supreme Court admitted was dicta and which briefly mentioned *Tecon*. Def.'s Mot. at 5 n.3 (citing *Tohono*, 131 S. Ct. at 1729-30). But while dicta from a higher court may on occasion prove persuasive (when it illuminates a rule to be applied, for instance), this discussion in *Tohono* is not of that ilk. The Supreme Court was merely explaining that a statute's purpose is not nullified when precedents construe it to cover less than all circumstances in which that purpose could be furthered; the high court was not opining on the correctness of the *Tecon* constuction of Section 1500, and did not even mention the textual basis for that decision.

The Court is persuaded by defendant's argument that the complaint in *Ebel* and the complaint in this case share the same claims with respect to the Pellegrinis and Ms. Ebel. Defendant correctly points out that plaintiffs use nearly identical language in both complaints to describe the operative facts giving rise to both the negligence and takings theories. Def.'s Reply in Supp. of Mot. to Dismiss ("Def.'s Reply") at 5. The property of Ms. Ebel and the Pellegrinis is identified as the same in both complaints, *compare* Compl. ¶¶ 1-2, *with* Def.'s Mot. Ex. 1 at 1 (*Ebel* Compl. ¶¶ 2-3), both complaints refer to the dredging as the "St. Johns River Maintenance Dredge Project," *compare* Compl. ¶ 7, *with* Def.'s Mot. Ex. 1 at 2 (*Ebel* Compl. ¶ 4), both complaints describe the location of the dredging as "[c]uts 40-41, in the vicinity of buoy 34, immediately adjacent to the property owned by the [p]laintiffs," *compare* Compl. ¶ 7, *with* Def.'s Mot. Ex. 1 at 2 (*Ebel* Compl. ¶ 4), and both complaints allege that the dredging resulted in the loss of "lateral and subjacent support" of the riverbank, causing its collapse and damage to plaintiffs' seawalls and adjacent structures, *compare* Compl. ¶¶ 7-9, *with* Def.'s Mot. Ex. 1 at 2 (*Ebel* Compl. ¶¶ 5, 12). There is no information in the complaints to suggest they are each based on a distinct set of operative facts. With respect to Ms. Ebel and the Pellegrinis, the complaints describe identical facts.

Although plaintiffs argue that there were two separate incidents of dredging, and thus at least two separate sets of operative facts, *see* Pls.' Resp. at 2-3, 6, the complaint before the Court does not allege on its face any dates that would allow the Court to differentiate between separate incidents.[5] Indeed, the complaint before the Court is even less specific with respect to the damage to Ms. Ebel's and the Pellegrinis' property than the complaint in *Ebel*, because attached to that complaint were the administrative claim forms and the declaration of Mr. Smith, which allow relevant dates to be approximated. *See* Def.'s Mot. Ex. 1 at 6-11 (*Ebel* Compl. Exs. B & C). The complaint here does not have any such attachments pertaining to the claims of Ms. Ebel or the Pellegrinis, so with respect to their claims, only the plain language of the complaint is available. Given that the plain language is bereft of any temporal information regarding Ms. Ebel's and the Pellegrinis' claims, even to determine whether plaintiffs' suit was filed within the statute of limitations requires the generous step of importing into this case the dates found in the attachments to the *Ebel* complaint. Doing so may allow the Court to identify two discrete incidents of dredging --- albeit within the same broader project --- but it also works to undermine plaintiffs' contention that the two suits are based on different operative facts, because any distinction between the two incidents would be due to the facts pleaded in *Ebel*. The complaint filed in our court contains no specific allegation of any injury suffered by the Pellegrinis' or Ms. Ebel that was not contained in the *Ebel* complaint.

Plaintiffs' argument that the two suits are based on different operative facts is premised not only on the identification of two separate incidents of dredging, but also on the assertion that the district court only exercised jurisdiction over one of these incidents. Plaintiffs contend that if the district court did not take jurisdiction over claims arising from one of the two dredging incidents, then the claims were never pending before the district court and Section 1500 presents

---

[5] Obviously, the third set of facts, relating to the damage incurred by the Zizas, was not before the district court, as the Zizas were not parties to that lawsuit.

no barrier to the Court's jurisdiction over them. Pls.' Resp. at 2-3, 6. The Court finds this argument unavailing. Plaintiffs are incorrect to characterize the district court's *sua sponte* questioning of whether it could take jurisdiction over claims arising out of alleged 2010 dredging as proof that those claims were not pending before the district court. Once filed, claims are pending until dismissed or a final adjudication is reached. Even if a claim is ultimately dismissed for lack of subject-matter jurisdiction, it was pending from the time it was filed until dismissal. *See Young*, 60 Fed. Cl. at 424. Here, however, the district court did not dismiss the claims in *Ebel* until October 12, 2011. Docket No. 16-1 at 2 (*Ebel* Docket No. 55). The *Ebel* court's request for further briefing from plaintiffs on whether it could take jurisdiction over all of the claims, Pls.' Supp'l Mem. Ex. 7 at 2-3, should not be confused with a conclusive determination that it lacks jurisdiction. Thus, all claims alleged in *Ebel* were pending until they were dismissed on October 12, 2011.

Plaintiffs also assert, without any explanation or analysis, that the dismissal of the district court case makes the motion to dismiss filed in this case "moot." Pls.' Supp'l Mem. at 1. But since our court's jurisdiction must be evaluated based on the state of things at the time the complaint was filed in our court, *see Keene Corp.*, 508 U.S. at 207-08; *Loveladies Harbor*, 27 F.3d at 1548, the fact that the Pellegrinis and Ms. Ebel no longer "ha[ve] pending" these claims in another court is irrelevant. Since there does not appear to be any looming statute of limitations problem --- as alleged takings due to 2008 actions are safely within the six-year limit, *see* 28 U.S.C. § 2501 --- Section 1500 as applied to this case is a mere annoying technicality, which from the perspective of the bench is perhaps worse than being moot. Plaintiffs control their procedural fate, and as long as they refrain from filing these claims elsewhere in the interim, the Court is not aware of any obstacle preventing Ms. Ebel and the Pellegrinis from filing a new complaint here --- which would be directly related to this case under RCFC 40.2(a), and a likely candidate for consolidation under RCFC 42(a).[6]

Because Ms. Ebel's and the Pellegrinis' takings claims before the Court are based on the same operative facts as the negligence claims they raised in *Ebel*, and the *Ebel* claims were pending in the district court from July 22, 2010 until October 12, 2011, Section 1500 bars the Court from taking jurisdiction over these claims. Accordingly, the claims of the Pellegrinis and Ms. Ebel are dismissed without prejudice, leaving the Zizas as the only named parties in this lawsuit.

---

[6] To avoid any unnecessary and vexing procedural complications, the Court would be open to holding a status conference, if requested, to discuss the most efficient way for the Pellegrinis and Ms. Ebel to re-file their claims.

**B.  The Court Lacks the Power to Grant Equitable Relief Requested**

Our court exists primarily as a forum for determining whether monetary relief shall be awarded for non-tort claims brought against the United States.[7]  *See* 28 U.S.C. §§ 1491-1509.  Relief other than money damages is limited to a few discrete areas.  This court has jurisdiction over claims for something other than money in certain disputes under the Contract Disputes Act of 1978 ("CDA"), *see* 28 U.S.C. § 1491(a)(2) (Supp. IV 2010) (cross-referencing 41 U.S.C. § 7104(b)(1)); in bid protests, *see* 28 U.S.C. § 1491(b); and in actions for declaratory judgments concerning the tax status and classification of certain organizations, *id.* § 1507; *see also* 26 U.S.C. § 7428.  Concerning claims that are otherwise within our court's jurisdiction, Congress amended the Tucker Act in 1972 to arm us (or, more accurately, our predecessor) with equitable powers in two circumstances.[8]  The first covers matters once a plaintiff has been found entitled to relief, as "[t]o provide an entire remedy and to complete the relief afforded by the judgment, the court may, as an incident of and collateral to any such judgment, issue orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records, and such orders may be issued to any appropriate official of the United States."  28 U.S.C. § 1491(a)(2) (2006).  The second involves a power that may be exercised prior to judgment, and is designed for cases involving the review of agency decisions: "In any case within its jurisdiction, the court shall have the power to remand appropriate matters to any administrative or executive body or official with such direction as it may deem proper and just."  *Id*.

Defendant has moved to dismiss the third cause of action, which is a claim for injunctive relief.  Plaintiffs request permanent injunctions to prevent the Corps from further dredging near Ramoth Drive and to require the Corps to build a bulkhead or some alternative erosion-controlling structure along the riverbank.  Compl. at 6-7.  They allege that this relief "is incidental and subordinate to" their "primary claim for monetary damages," and "is necessary to mitigate further damages."  *Id.* at 6.  The government argues that such relief is beyond the limited equitable powers of the Court and is not "tied and subordinate" to monetary relief.  Def.'s Mot. at 9-10 (citing, *inter alia*, *James v. Caldera*, 159 F.3d 573, 580-81 (Fed. Cir. 1998) and *Austin v. United States*, 206 Ct. Cl. 719, 723 (1975)).  Defendant explains that the relief is prospective and is not related to the claim for money damages for property already taken.  *Id*.

---

[7]  This has been the case since Congress's initial attempt, via the Tucker Act, to extend our predecessor court's jurisdiction to cover equitable claims was rebuffed in a curious decision of the Supreme Court.  *See United States v. Jones*, 131 U.S. 1, 16-19 (1889); *id.* at 20 (Miller, J., dissenting).

[8]  As the government acknowledges, *see* Def.'s Reply at 11, our court may also use equitable principles, doctrines and theories when determining whether (and how much) money damages should be awarded in cases within our jurisdiction.  *See Pauley Petroleum Inc. v. United States*, 219 Ct. Cl. 24, 38-40 (1979).

Plaintiffs argue to the contrary that the equitable relief they seek is "tied and subordinate" to a monetary award. Pls.' Resp. at 4-5. They maintain that this relief comes under the first circumstance described above under 28 U.S.C. § 1491(a)(2), as "necessary" for them to receive "an entire remedy" and to complete their money judgment relief. Pls.' Resp. at 4. As plaintiffs explain it, a properly constructed seawall could prevent a further taking of their property due to dredging-induced erosion, but would require dredging to stop while it is being built. *Id.* Were the government given the choice between paying for plaintiffs' seawall or building its own, plaintiffs maintain, the government could then choose the most cost-effective option. *Id.* at 5. Thus, according to plaintiffs, an injunction against dredging while a seawall is constructed will limit damages connected with the dredging to the costs of the seawall, and an injunction making the government build its own seawall could also minimize these damages.

It seems to the Court that the parties' focus on whether the requested injunctive relief would be "tied and subordinate" to a money judgment misses the point of the statute being interpreted. In cases that are neither bid protests nor under the CDA, our court is not authorized to order whatever sort of injunctive relief it finds appropriate. Putting aside remands for the time being, under the general jurisdiction of the Tucker Act the only injunctive orders that are authorized are "orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records." 28 U.S.C. § 1491(a)(2) (2006).[9] The cases cited by the parties all employ the "tied and subordinate" test in the context of a requested order that falls within the enumerated categories. *See James v. Caldera*, 159 F.3d 573, 576-77 (Fed. Cir. 1998) (order correcting Army personnel record); *Bobula v. U.S. Dep't of Justice*, 970 F.2d 854, 857-58 (Fed. Cir. 1992) (order nullifying a transfer and restoring employee to previous position); *Ellis v. United States*, 222 Ct. Cl. 65, 69-70 (1979) (order placing civilian employee of Navy in appropriate retirement status); *Austin v. United States*, 206 Ct. Cl. 719, 721 (1975) (order correcting Navy personnel record). If a plaintiff seeks an order that is not among those enumerated, even if it were "an incident of and collateral to" a money judgment, 28 U.S.C. § 1491(a)(2), it is not within our power to issue (under that particular provision). The requested orders identified in the complaint --- enjoining further maintenance dredging in the vicinity of plaintiffs' property and requiring the government to build a structure to minimize erosion --- obviously do not fall within the list of authorized orders. *See id.*

Thus, plaintiffs' only hope of obtaining the requested injunctive relief would be through our court's remand power. Plaintiffs do not attempt to justify the third cause of action on that particular ground, focusing instead on the power to "provide an entire remedy and complete the relief" of a money judgment, Pls.' Resp. at 4 (quoting 28 U.S.C. § 1491(a)(2)), which was rejected in the preceding paragraph. This is not surprising, though, as the verb "remand" has long been understood as meaning to *return* or *send back* a case to another government body. *See Ballentine's Law Dictionary* 1088 (3d ed. 1969) ("The return of a case to an administrative agency after a review by the court of a determination or decision of such agency."); *Black's Law Dictionary* 1457 (4th ed. 1968) ("To send back."); *Webster's Third New International Dictionary*

---

[9] It did not go unnoticed that plaintiffs substituted an ellipsis for this list of authorized orders when they quoted the relevant provision. *See* Pls.' Resp. at 4 n.1.

1919 (1971) (defined as "to return (a case) . . . from a court to an administrative agency"); *The American Heritage Dictionary of the English Language* 1100 (1969) ("To send or order back."). Plaintiffs' takings claim does not involve the review of a determination by the Corps, but rather seeks just compensation for the physical taking of private property. Unlike the FTCA claims regarding the 2008 damage asserted in the district court, that were initially presented to the agency, *see* Def.'s Mot. Ex. 1 at 8-12 (*Ebel* Compl. Exs. C & D), takings claims were never before the agency and thus cannot be remanded --- one cannot send something *back* to a place it never was.

Moreover, there is the problem of the substance of the injunctions requested by plaintiffs. An injunction against dredging is sought because "[s]uch dredging, if permitted to continue, will cause loss of lateral and subjacent support and will further deprive [p]laintiffs of their property." Compl. at 6. An injunction requiring the government to install a seawall is rationalized as "[t]he most cost-effective method to prevent a taking of the [p]laintiff[s'] property," with the construction costs a "substitute for monetary damages" that would have been recoverable were there to be "further takings." Pls.' Resp. at 5. In essence, plaintiffs ask the Court to order the government to not create future claims within our jurisdiction. It is hard to see how our court would have jurisdiction to order the government to stay out of our jurisdiction. While the natural result of a determination, under 28 U.S.C. § 1491(a)(2), of rights under a contract that is still being performed would control future behavior under that contract, or an application of tax law to one tax year of a taxpayer could through collateral estoppel dictate that law's application to other tax years, *see Ammex, Inc. v. United States*, 384 F.3d 1368, 1371 (Fed. Cir. 2004) (citing *Comm'r v. Sunnen*, 333 U.S. 591, 598-99 (1948)), plaintiffs seek something akin to an order that the government never breach another contract with a party, or never (illegally) overtax that party. This is particularly inappropriate in the current context, as the Takings Clause of the Fifth Amendment entitles a property owner to just compensation for property taken for public use, but "[e]quitable relief is not available to enjoin an alleged taking of private property for public use, duly authorized by law, when a suit for compensation can be brought against the sovereign subsequent to the taking." *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1016 (1984) (citation omitted). Thus, even a court with broad equitable powers could not issue the orders plaintiffs request.[10]

Plaintiffs' third cause of action does not come within our court's subject-matter jurisdiction. It is accordingly dismissed without prejudice.

### III.  CONCLUSION

For the reasons stated above, the government's motion to dismiss parts of this case is **GRANTED**. The claims asserted by Ms. Ebel and the Pellegrinis are dismissed without prejudice, and they are no longer parties to this lawsuit. The third cause of action is dismissed

---

[10] Though not well-explained, this seems to be the basis for the government's argument, presumably in the alternative, that the third cause of action fails to state a claim upon which relief can be granted. *See* Def.'s Mot. at 1, 9 (citing RCFC 12(b)(1)).

without prejudice.  The case shall be re-captioned as *Mladen Ziza* et al. *v. United States*, and defendant shall file its response to the complaint on or by February 6, 2012.

**IT IS SO ORDERED.**

s/ Victor J. Wolski

**VICTOR J. WOLSKI**
Judge
